THE STATE *against* ROCKAFELLOW.

ON AN INDICTMENT FOR A RAPE.

It is a good plea, in abatement to an indictment for a rape, that one of the grand jurors by whom the bill was found, was not a freeholder, as he is directed to be by the act of assembly.

In a capital case, the court have a power to bail, but they will not exercise this power when there exist strong doubts as to the innocence of the prisoner, particularly after an attempt by him to escape.

An indictment had been found against the prisoner at the Hunterdon assizes, in February term last, which had been removed into this court by the *Attorney General* by *certiorari.*

The prisoner being arraigned, tendered in *propria persona,* the following plea in writing.

And the said Christopher Rockafellow, in his own proper person comes, and having heard the aforesaid indictment read, and protesting that he is not guilty of the premises charged in the said indictment, for plea nevertheless saith, that he ought not to be compelled to answer the said indictment, because he says, that by an act of the legislature of

the former province, now state of New Jersey, entitled, " An act for ascertaining the qualifications of jurors within this province," passed the eleventh day of March, in the year of our Lord one thousand seven hundred and thirteen or fourteen, (*Allinson* 24) it is among other things enacted, that from and after the publication of that act, each and every person summoned and returned to serve on grand inquests, shall be freeholders of the county, for which they shall serve, and shall each of them be worth one hundred pounds in real and personal estate, in the said county. That the said act of assembly has been published, and now remains in full force and unrepealed. And the said Christopher further saith, that at the Court of General Quarter Sessions of the Peace, in and for the said county of Hunterdon, in the sessions of February last past, the sheriff of the county of Hunterdon, did summon and return one Titus Quick, to serve on the grand inquest of the county aforesaid, at the said sessions of the said court. That the said Titus Quick, was by the court aforesaid, at the sessions aforesaid, sworn to serve as a grand juror for the county aforesaid, and did then and there serve as a grand juror for the county aforesaid, and did then and there serve as a grand juror in the grand inquest aforesaid. That the said Titus Quick, at the time he was summoned, returned and sworn, and when he served on the said grand inquest, was not a freeholder of the said county, nor was he worth one hundred pounds in real estate in the said county. And the said Christopher further saith, that the said indictment was found and presented by the said grand inquest, at the court and sessions aforesaid ; that only twelve of the jurors so summoned, returned and sworn, or affirmed, as members of the said grand inquest found the indictment to be a true bill ; and the said Titus Quick, being so as aforesaid, an unqualified, illegal juror, was one of the twelve jurors who agreed to find and present the said bill of indictment; all which the said Christopher is ready to aver, verify and

prove, wherefore he prays judgment whether he shall be called further to answer the said indictment, and he prays to be dismissed the court here, of and upon the premises.

CHRISTOPHER ROCKAFELLOW.

To this plea the *Attorney-General* instantly demurred; and the court ordered the counsel for the state to proceed, the demurrer being upon their side.

*Woodruff*, attorney-general, and *Leake*, in support of the demurrer, contended, that the want of freehold in the juror was matter of challenge to the person, and not of plea to the indictment. An objection of this kind must be made before bill found by the prisoner, the court, or by the prosecution; but it is not competent to question the regularity of the proceedings or the competency of the juror in this manner, and at this time. By the common law, one who is under prosecution, for any crime whatsoever, may, before he is indicted, challenge any of the persons returned on the grand jury, as being outlawed, &c. 2 *Hawk.* 307, *c.* 25, *sec.* 16. Every exception of this kind must be taken before the indictment found. 3 *Bac. Abr.* 725; 2 *Hale H. P. C.* 272–3.

Wherever the grand juror labors under any of the disabilities enumerated in the statute, 11 *Hen.* 4, *c.* 9, the exception may be taken at any time, by plea to the indictment. 3 *Inst.* 32–3; *Scarlett's case*, 12 *Co.* 98; 2 *H. H. P. C.* 154–5. But this is considered uniformly as a deviation from the common law, introduced by the statute, which declares in express terms, that every indictment made contrary to its directions, in any point, shall be held void and of no effect.

The act of assembly, prescribing the qualification of jurors, contains no negative words; but it affirmatively points out the description of persons who are to be summoned and returned as grand jurors, without infringing

State *v.* Rockafellow.

upon the common law as to the manner in which excep-
tions are to be taken, of any defect in complying with its
provisions.

The want of a freehold or an estate, of a certain value, is
not a positive incapacity, either by the common law or by
the statute. The provisions of the act are merely directory
to the sheriff, and intended for his guidance, and it is not
competent to a prisoner, who has suffered the opportunity of
challenging the juror to pass by without availing himself of
the objection, to come forward at this late period to urge it.
The language of the law as to the other qualifications of the
jurors, shews clearly that the legislature did not intend that
a defect of this kind should constitute a ground of defence;
and that the court, instead of examining into the guilt or
innocence of the accused, should employ their time in inves-
tigating the qualifications of the jurors. The same act
requires, that the persons so summoned and returned shall
be notified in a particular manner, and a certain number of
days before the first day of the court; that they shall not
only be freeholders, but that they shall be "of good fame,
credit, and reputation." It is easy to imagine a case in
which the absurdity and injurious consequences of this doc-
trine shall be made conspicuously manifest. A person,
when he is arraigned upon his indictment, may plead, that
one of the grand jurors was not notified in the particular
manner pointed out by the act; that a second had no notice,
until within four days before the first day of the court;
that a third is not a freeholder within the county; a fourth
not possessed of property to the amount of one hundred
pounds; and a fifth not of good fame and character. With
what propriety can it be urged, that the attorney general
is bound to take an issue upon each of these different allega-
tions, and that the time of the court is to be wastefully
consumed in trying questions which have nothing to do with
the guilt or innocence of the accused? That upon the issue,
whether one of the jurors is a man of good fame and repu-

tation, his character is to be made a matter of judicial consideration, in the face of the country, without affording him an opportunity of vindicating himself from the aspersions that may be thrown upon him. Such consequences are alarming, and, as they are legitimate consequences from the doctrine relied upon for the defendant, merit the most serious consideration.

*R. Stockton*, for the prisoner. This unquestionably is a case which, so far as regards the circumstances attending it, is new; and the consequences of a decision, which will establish a rule of very general operation, not only in this case, but in numerous others which might be stated under it, extremely important.

The legislature of the state appear to have considered it as of the utmost consequence to prescribe qualifications which would be, in their opinion, the best calculated to secure the fittest characters to officiate in the great and delicate duty of presenting the guilty for trial, and of guarding the innocent from even the forms of defence. When such is the obvious intention of the legislature, it becomes the duty of the court, in construing the statute, or the language by which this intention is expressed, to keep this idea in their mind, and to endeavor, so far as it can be rendered consistent with the general principles of law and policy, to give effect to the salutary and benevolent provisions of the act.

In this case, the important facts which are alleged in the plea of the defendant, and admitted by the demurrer, are two.

1. That Titus Quick, one of the grand jurors who found the bill against the prisoner, was not, at the time, a freeholder within the county.

2. That the bill was found by twelve of the grand jurors only, of which number Quick was one.

That by the common law, exceptions lay to the competency of a grand juror, it would, after the authorities which

have been cited on the part of the prosecution, be a waste of time to attempt to prove. The principle has never been questioned, and is acceded to by the attorney general. Neither can there exist any question but that the act of assembly which has been referred to creates a positive qualification, which it is necessary for every grand juror to possess, to wit: he must be a freeholder. The point in controversy is, then, narrowed down to this question: may a want of this qualification be pleaded in avoidance of the indictment?

1. By the common law, it was competent to plead the disqualification of a grand juror, in bar of the indictment, notwithstanding advantage might have been taken of the defect by challenge. It was resolved in the year book of 11 Henry IV. by the advice of all the judges, that one outlawed on an indictment for felony, may plead in avoidance of it, that one of the indictors was outlawed for felony. *Hawkins b.* 2, *c.* 25, *sec.* 18, considers this as a decision at common law. In Sir William Withipole's case, *Cro. Car.* 134, 147, the defendant pleaded that one of the indictors was outlawed, but because he was not ready to prove the fact, and the court conceived it be only for the purpose of delay, he was ordered to answer over. No intimation appears in the report, that the plea was founded upon the statute of 11 Henry IV. In 2 *Hale's P. C.* 155, this opinion is confirmed. After stating that if one of the indictors be outlawed, though in a personal action, it is a sufficient plea to avoid the indictment; and citing the decisions in the year book of 11 Henry IV. and *Cro. Car.* he adds, "and the statute of 11 Henry IV. fortifies this;" plainly supposing these decisions to have been by the common law, and intimating that the statute was only in affirmance of the common law, though it created some new, and re-enacted some old exceptions.

2. If this right were doubtful at common law, yet where the disqualification of the juror, as in this case, arose from

State v. Rockafellow.

an express legislative act, no question can remain upon the subject. All the cases cited of decisions under the statute of 11 Henry IV. are applicable to this case, and conclusive upon it, unless they can clearly distinguish the provisions of that statute from the act of assembly. An attempt of this kind has been made, and it has been argued, that as the former declares that every indictment found contrary to it should be "held void, revoked, and forever holden for none," whereas no such annulling or negative clause is inserted in the act of assembly, which simply specifies a qualification, but does not in express terms render the defect of it a fatal objection to the bill, the authorities which are founded upon the former, are not referable to the latter. It is contended, therefore, that every prisoner, in order to avail himself of a non-compliance with the directions of this act, must do it by challenge to the person of the juror before bill found.

It is observable, in examining the distinction which it has been attempted to draw, that the statute in question does not in any part of it point out the manner in which exception is to be taken on account of a non-compliance with its provisions; and that the allowance of a plea is by a legal influence of the judges, and not under the words of the statute. By analogy, then, it follows, that as the act of assembly requires that grand jurors should possess certain qualifications, and prescribes no manner in which advantage is to be taken of the defect, the court ought to admit it to be done also by plea. Having declared who shall be grand jurors, the negative is necessarily implied; and the law is as clear as if it had particularly enacted, that every bill found by persons not possessing these requisites should be void*. The distinction which formerly prevailed between a provision by statute, merely affirmative, and one which is

---

* This doctrine is particularly laid down in *Plowd*, 206, in the case of *Stradling* v. *Morgan*. See also, *Gedney* v. *Inhabitants of Tewksbury*, 3 *Mass.* 307; *Jackson* v. *Bradt*, 2 *Caines* 169.

prohibitory is now exploded; and in modern times it has been held, more in conformity to reason and sound policy, that a statute merely directory, particularly when it respects authorities conferred upon particular persons, though it contains no negative clauses, must be construed negatively. Numerous decisions upon analagous cases might be referred to in our own courts, in which this doctrine has been recognized. A return of a road made by a surveyor, who is not legally qualified, is considered as a nullity, though no negative words are contained in the act of assembly upon that subject.

It has been contended also, that as the third section of the act in question, reserves to every person his right of challenging any juror for a defect of the qualifications required by the act, the inference is, that any other mode of taking advantage of it is thereby excluded. This section, however, has an evident and exclusive reference to civil cases, and to the challenges that are allowed to be taken to petit jurors, The term plaintiff and defendant, are there used as the persons who may thus challenge, and this cannot be intended to embrace public prosecutions. The clause of the statute of *articuli super chartas.* 28 *Edw. I. c.* 9, which ordains that "the sheriff, &c., shall render double damages," extends only to juries returned in suits between party and party, because it says, he shall render them to the plaintiff, which is a denomination never given to the king or prosecutor, where the proceeding is by way of indictment. 2 *Hawk.* 311, *b.* 2, *c.* 25, *sec.* 22; *F. R. B.* 384, (165.)

The mode of taking exceptions in criminal cases is left as it was at common law, and the whole argument, and all the authorities cited on the other side, shew, what is indeed indisputable, that a challenge may be made, and that such challenge must be made before indictment found. But there is no authority which goes to prove that the defendant may not as well avail himself of the defect by plea to the indictment. According to the cases and authorities that have

been referred to, it was competent for the prisoner to challenge the juror on the ground of outlawry, or to plead the fact in bar of the bill.

The proposition laid down in 3 *Bac. Abr.* 725, is couched in very general language, and from the note subjoined, it would seem to refer more particularly, if not exclusively, to the common law, requisite of *legalis et probus homo,* than to a specific statute disqualification, such as want of freehold. It is said this exception has been often overruled, because *prima facie* all men shall be intended honest and lawful; but the court would go great lengths indeed, were they to say that every man shall be presumed to be a freeholder, and worth one hundred pounds. Allowing however, the most general construction that can be put upon the language, it is a mere *dictum* of the abridger, and is unsupported by any one of the authorities referred to.

Consequences have been made a ground of argument on the part of the prosecutor, but if they are to furnish the reasons upon which this question is to be decided, they ought to be examined on both sides. One most glaring inconvenience will result from confining the accused to the mode which has been suggested, of taking advantage of any defect in the juror, by a challenge to the person, which is, that it will rarely happen that an opportunity will be afforded him of exercising this important privilege; and that unless the sheriff should feel himself bound conscientiously, and legally, to comply with the directions of the law, this act of assembly will be virtually a dead letter. It seldom happens that a man is informed that an indictment is preferred against him. It has been said, and it is not meant to question this principle of law, that the challenge will come too late after indictment found; and probably it would come too soon before the indictment is laid before the grand jury. Should a man actually be present in court, at the time when the jurors are sworn in, he must be compelled

to challenge, before he knows that any accusation will be brought forward against him, and in every case before he knows that the case will be found.

As a general principle then, it appears most consistent with justice and equity, and with the policy of the law, to leave the fact open to judicial inquiry upon a plea to the indictment.

KINSEY C. J. delivered the opinion of the court. Without a legal presentment, no man can, under our administration of the laws, he tried for any heinous offence; and certainly without such legal presentment, he ought not to be called upon to answer a charge, by which he is accused of one of the enormous crimes known in our law.

. The legislature have been of the same opinion, and have thought proper particularly to specify the requisites which it shall be necessary for the persons, who execute the functions of grand jurors, to possess. By the 2d section of the law in question, (*Allinson* 24) it is declared, that every person who shall be summoned and returned to serve as a grand juror, shall be a freeholder, and be possessed of real or personal estate, to the value of one hundred pounds.

So positive and affirmative a description as this, implies, in our minds, a negative, as much as if it were actually expressed. That the indictor, or person presenting the accusation against the prisoner, was not such a person, and did not possess the qualifications required by the act of assembly, is surely, in its nature, fairly the subject of a plea to the bill of indictment. It is a reasonable and lawful answer to an accusation, that it has not been preferred in the manner, or by the persons, which the law recognizes; and it results from the provisions of the statute, as clearly as if it had been explicitly pointed out.

To contend that the accused person must challenge the grand juror, when he is called in court to be sworn, would be just as much an innovation upon the act of assembly. No

State *v.* Rockafellow.

mode is pointed out in which the exception is to be taken, and we consider that as the most correct mode which, without being otherwise peculiarly repugnant to the principles or policy of the law, is best calculated to give effect to its humane and salutary provisions. If the mode by challenge is to be adopted, it must necessarily result, that nine times out of ten the benefit of a statute, which provides a security for our lives, fortunes, and reputation, by requiring that an indictment shall always be presented by jurors, respectable for their character and standing in society, shall be absolutely lost to the accused, without any actual neglect or fault of his own. It frequently occurs that the accused is altogether ignorant of the complaint when the grand jury is called; if he should chance to be present, he cannot be assured that the prosecution will proceed; and, at any rate, it would be most extraordinary for him to make his challenges when there is no certainty that his case will come under their cognizance. In most cases of a capital nature, the person charged with the offence is actually in confinement, and has not the physical capacity to make his challenges; he is never brought up and confronted with the grand jurors; nor is he served with a list of the persons who are to compose it; thus circumstanced, it would be worse than a form; it would be a mockery of law and justice to compel him to avail himself of exceptions of this kind, or to be considered as forever waiving every error in the proceedings of the sheriff.

It is surely the proper time, and certainly early enough, for the accused to except to the qualifications of the indictors after the bill has been presented against him. He then knows, or can be informed, who they are; he has time to ascertain their qualifications, and his own means of proving the exceptions which he may be advised to take; and we are unable to perceive any grounds upon which he can be fairly deprived of his plea to their incompetency.

In the case before the court, the demurrer admits that Quick was not a freeholder, and that without him the bill is found by eleven jurors only ; the presentment is therefore void, and avoidable by pleading.*

This is not by any means an anomalous case ; the same principle, or one very similar to it, has been before recognized in this court. The legislature have directed, that in the case of Quakers, an affirmation shall have the same legal effect as an oath. One Sharp, who had been convicted of murder at the Burlington Oyer and Terminer, moved, in arrest of judgment, that it appeared on the face of the indictment that it was found on the *oaths* of part of the jury, and the solemn affirmation of others, without stating these last " to be of the people called Quakers ;" the judgment was arrested upon this ground. The act of the legislature, which gives the affirmations of Quakers the same validity and effect as an oath, does not, however, in express terms, require that it shall appear on the face of the proceedings themselves that the affirmants did actually belong to this religious persuasion ; nor does it authorize the exception to be taken after conviction ; nevertheless we hold ourselves bound to allow it. In that case it was not argued, that Sharp ought to have challenged the jurors who were affirmed, on the ground of their not being Quakers, when they came to be qualified ; and though no such answer was given, it is equally certain that it would have been deemed insufficient.

Upon the whole, the court entertain no doubt upon the subject, and think that judgment must be given for the prisoner upon the demurrer.

Indictment quashed.

Rockafellow being afterwards brought up before the court on a *habeas corpus*.

* It would seem, from 2 *Hawk.* 312, c. 25, sec. 28, that if one of the grand jury who find an indictment, be within any one of the exceptions, he vitiates the whole though never so many unexceptionable persons joined with him in finding it.

*Frelinghuysen* and *R. Stockton,* for the prisoner, moved that he might be admitted to bail.

In support of the application, they laid before the court the affidavit of the prisoner himself, as well as of several other persons, tending to establish the fact of his innocence, and to disprove the relation of the woman, as to the employ-ment of force.

They contended that this court had a discretionary power to admit to bail in all cases, and cited 1 *Com. Dig.* 658, *Bail F.* 1; *Ib.* 660, 662; 4 *Black. Com.* 299, as to the gene-ral power of the court, and the circumstances under which this discretion would be exercised. The case of *The King* v. *Bell, Andrews* 64, was also insisted upon. In that case, the prisoners being brought up by *habeas corpus,* their own affidavits were read to shew that this was a groundless and malicious prosecution. Other persons testified that two ses-sions had elapsed since their commitment, without any trial. The court admitted them to bail, principally upon the ground that there having been an assizes since their commitment, they might have been tried before; and Lee, C. J., said he remembered a similar case, where, on account of a delay, the defendant was bailed.

This case was also referred to, to shew the propriety of receiving the affidavits of the parties themselves, in cases of this kind. In that case, Urling objected to reading the affi-davits by the defendants; but the court said they might make use of any means for receiving light in the case, in order to guide their discretion, though they would not place an undue credit on the affidavits of the parties.

1 *Com. Dig.* 660, cites *Fitzpatrick's case* from 1 *Salk.* 103, where, though the commitment was for high treason, the court admitted to bail upon the single ground that a sessions was past without prosecution. They will also admit to bail when the matter charged appears doubtful. 1 *Bac. Abr.* 356. *The King* v. *Lord Baltimore,* 1 *Bl. Rep.* 648. 2 *Hawk.* 175-6, *c.* 15, *sec.* 80.

Perhaps there is no one crime in the whole extent of criminal law which can be so easily charged as that alleged against the prisoner—none which can be repelled with greater difficulty; (*H. H. P.*, c. 633, 635) and consequently there is none in which the court ought more cautiously to watch over and protect the accused.

*Woodruff* (attorney-general) and *Leake*, contra, argued, that under the act of assembly of 22d November, 1794, (*Pat.* 129) persons chargeable with rape are expressly excluded from being admitted to bail, which extends to this court as well as to justices of the peace. 4 *Black. Com.* 299.

KINSEY, C. J., delivered the opinion of the court. We are not now sitting to try the merits of the case, or to enter into any nice inquiry as to the precise weight that ought to be allowed to the evidence for and against the prisoner.

This court may bail in this case, notwithstanding the act of assembly of the 22d of November, 1794, which only prohibits the sessions and justices of the peace from admitting to bail in cases of rape, and other crimes specified in the act. The discretionary power of the justices of the Supreme Court, remain unimpaired by that law, and their right to bail when they think the prosecution groundless, or when there are other circumstances which render it proper, still continues as before.

In this case, however, we do not think the prisoner has made out such circumstances as would entitle him to this advantage in the proper exercise of our discretionary powers. As the affidavits stand upon both sides, the evidence of his guilt is very strong. There are, indeed, some favorable circumstances which no doubt will receive the fullest consideration of the jury by whom the cause will be eventually tried; but we do not, and we cannot, form a judgment upon the effect of this testimony, or how far it

goes to exonerate him from the charge, or to fix the crime upon him. This is a matter for another, and a constitutional tribunal.

Under such circumstances, we should scarcely feel ourselves warranted in granting the present application; but what weighs decisively in our minds against it is his escape and flight from the constable. He does, indeed, undertake to shew that he had no intention of flying from justice, but that he meant to surrender himself and take his trial. This is possible, and we will not say that he is guilty of an untruth; but the fact is, he did not make a voluntary surrender, but was retaken by the activity and exertions of the sheriff. His letters to the sheriff might have been designed only to amuse him; many professions were made, but no voluntary surrender.

We entertain serious doubts as to the truth of the accusation; but a dubious case, attended with an actual escape and flight from the officer of justice, decides us against the application. The prisoner has been retaken, and must remain in custody until discharged by due course of law.

Prisoner remanded.