## JAMES O. GREEN et al.

### v.

### WILLIAM H. PIPER et al.

[Decided July 12th. 1912.]

1. Injunction does not lie to compel public officers to perform their duties respecting enforcement of the criminal law, nor to prevent commission of crime.

2. Suit does not lie to enjoin city authorities against permitting an amusement park to be operated by the city's lessees in violation of Sunday laws, and enjoining the lessees from so conducting the park; the city not being entitled, as lessor, to enjoin illegal use of the park.

3. An ordinance relating to Sunday amusements did not become a part of a lease. executed by the city, covering an amusement park, in the absence of any reference thereto in the lease.

4. On bill against city authorities and the lessees of an amusement park, owned by the city, to enjoin operation of the park in violation of the Sunday laws. a court of equity will not determine whether the lease could be made by the mayor and council. instead of a park commission; complainant's remedy being to apply to the courts at law for authority to institute an action to determine the validity of the lease, as authorized by *Practice act* § *44, 3 Comp. Stat. 1910 p. 4064.*

On demurrer to bill and amended bill.

*Mr. John W. Slocum,* for the demurrants.

*Mr. Aaron E. Johnston,* for the complainants.

EMERY, V. C.

The bill and amended bill are filed by complainants as citizens, taxpayers and residents of Long Branch, an incorporated city, against the city, and the lessees of property of the city, called the Ocean Park. These lessees, or their managers (who have also been made parties), have erected and are operating in the park various amusement structures, such as scenic railways, merry-go-rounds, Ferris-wheels, &c., and operate these or some of them on Sundays, as well as week days. These Sunday operations which have been continuous during the seashore season, are alleged to be violations of the Vice and Immorality act and punishable as crimes. The lease from the city under which the tenants claim does not contain any provisions restricting the use of the leased property in this respect, or providing that the property shall not be used for illegal purposes. The lease is for the term of twenty years from March 1st, 1910, for two years at an annual rental of $3,000, and for the next eight years five per cent. of the gross receipts of the tenant from all sources, and for the remaining ten years, ten per cent. thereof. At the time of the execution of the lease, February 9th, 1900, an ordinance of the city passed May 20th, 1907, was in force, the object of the second section of which was, according to the bill, "to prevent among other things games and plays on the first day of the week, commonly called Sunday," but on July 17th, 1911, as the bill alleges, this second section was repealed by the passing of another ordinance in lieu thereof, by the city council, from which last ordinance the second section preventing games and plays on Sunday was eliminated. Neither of these ordinances is set out in the bill, but for purposes of this demurrer, the ordinances will be treated as having the effect stated in the bill, and as if under the first ordinance the present amusements complained of were "games and plays" forbidden by the first ordinance, and as if the prohibition was repealed by the passage of the second ordinance. The charge in reference to the ordinance is, that this repeal of the ordinance forbidding games and plays was a violation of duty on the part of the mayor and common council of the city, and that by this act, and also by their failure to prevent the operation of the scenic railway on Sunday, they are

19

aiding and assisting the lessees in open and notorious violation of the Sunday laws. The "Mayor and the City Council of the City of Long Branch" are made parties defendant by that name only, and the several individuals holding these offices at the time of filing the bill (September 2d, 1911) have joined with "Long Branch" the incorporated city, in demurring to the bill. The lessees, and the defendants claiming or operating under them, have not joined in the demurrer. The relief prayed in this case is a decree that the council of the city has power and authority to stop the operation of the scenic railway on Sunday, that the tenants and their managers have no right to operate on Sunday, and may be enjoined from so operating it, and that the mayor and common council be enjoined from permitting it to be operated, and for a mandatory injunction compelling the mayor and common council to prevent the operation on Sunday "by all proper means in their control." This bill is not for the protection of any property rights of any of the complainants, but is essentially a bill by a citizen and taxpayer of a municipal corporation—*first,* to compel by injunction the municipal officers to perform a duty of enforcing public laws, and *second,* to enjoin the lessees of the municipality from violating the criminal laws of the state in their occupation of the lands leased by the city. In neither aspect of the case has a court of equity power to grant the relief asked.

Jurisdiction by injunction, mandatory or otherwise, merely to compel public officers to perform their duties in relation to the enforcement of the criminal law, has never been exercised. For any such willful violation of merely public duties, the remedies are exclusively in other courts. Courts of equity, on proper occasion, interfere to protect property rights, and for this purpose sometimes interfere when the acts complained of are crimes; but they never exercise a jurisdiction based solely on the right of a suitor or citizen to prevent the commission of a crime or its continuance. *Ocean City Association* v. *Schurch* (*Vice-Chancellor Grey, 1898*), *57 N. J. Eq. (12 Dick.) 269, 271;* *Gilbough* v. *West Side Amusement Co.* (*Vice-Chancellor Pitney, 1902*), *64 N. J. Eq. (19 Dick.) 27, 36;* *McMillan* v. *Kuehnle* (*Vice-Chancellor Walker, 1900*), *76 N. J. Eq. (6*

*Buch.) 256, 263;* approved on this point on appeal, *Ibid. (1910), 78 N. J. Eq. (8 Buch.) 251, 252.*

The exercise of such a jurisdiction by a court of equity and its determination by decree that a crime had been committed, would hold defendants to answer for a crime otherwise than by the presentment or indictment by a grand jury and violate the constitutional provision of article 1, paragraph 9. The bill alleges that several convictions under the criminal law for the operation of the scenic railway on Sunday have been obtained before a justice of the peace, that nominal fines of one dollar were imposed, and that these convictions have had and will have no effect in preventing the violation of the law in the future, and further that the grand jury of the county have failed to indict defendants operating the railway upon complaint duly made and proved before them and in disregard of the charge of the justice of the supreme court in relation thereto. A court of equity assuming jurisdiction on these grounds would become a criminal court reviewing the proceedings of grand juries, and manifestly act in violation of the constitutional provision.

On the *second* claim to an injunction prohibiting the lessees of the municipality from illegal criminal use of the public park by violation of the Sunday law, it is plain that any power of this court to exercise jurisdiction must be based on two propositions:

*First.* That the city, in its capacity as the lessor and property owner, has the right to enjoin its lessees from the illegal use complained of, and *second,* that on the failure of the city as such lessor and property owner to protect its property rights, a citizen and taxpayer has the right to sue for the injunction on behalf of the city, making the city a party defendant.

The complainants' case must fall, in my judgment, because the city as lessor has not, under the lease, the right to the injunction claimed. In the absence of any provision in the lease itself by which the mere unlawful use of the premises leased becomes a ground for forfeiture or injunction, or in the absence of a statute providing for the effect upon the lease of the unlawful use of the premises, there is no ground for interfering on behalf of the landlord by reason merely of such illegal use.

I have not been referred to any authority for the exercise of any jurisdiction of this character. The cases in which relief of any kind is given to the lessor by reason of the illegal use of the premises are those where the protection is based either on the express restrictive covenants of the lease, or upon statutes authorizing forfeitures of the lease for such uses.

No provisions relating to the illegal use of the property were incorporated in this lease. The provisions of the ordinance then existing relating to Sunday games and plays did not, in the absence of any reference thereto in the lease, become a portion of the lease itself, and even on the assumption that by its mere existence it did become part of the lease, its subsequent repeal by the city itself relieved the lessees from its operation and by the act of the lessor itself. The fact that the individuals exercising at the time the legislative power and discretion of the city violated their individual duties to the public, by this repeal, and by such violation changed any property rights of the lessor arising by reason of the existence of the ordinance at the time of the lease, does not have the effect of preventing the legal operation of the repeal upon the lease, or authorize this court to decree relief based on the continued existence either in law or equity, of the section repealed, and abandoned by the lessor.

Complainant further claims that by reason of the sharing by the city in all the receipts, it becomes a sharer in the profits of the illegal Sunday business, that this revenue could not be collected, and therefore the lease is imperiled. But unless the lease expressly provided for carrying on such illegal business, the lessor is certainly entitled to an account for the receipts from all the legal business, and inasmuch as the object of complainants' bill is to restrict the business to legal business, there is plainly no basis for injunction on this claim.

Disposing of complainants' case as presented and argued on its substantial claim, the demurrer of the city must be sustained, as also the demurrer of the individual officers holding the offices. I do not consider at all the formal objection as to making the mayor and common council defendants by those names alone, there being no such incorporation. The bill also presented another question, viz., one relating to the legal validity

of the lease itself based on allegations that under the charter and laws, the right to make the lease was vested not in the mayor and common council, who made the lease by ordinance, but in another body called "The Beach Park Commission of Long Branch." This commission (not alleged, however, to be a corporate body) is made defendant by this name, and the individuals comprising the body have joined in the demurrer. This claim, if there is any basis on which it can be considered at all in any court, is manifestly a legal claim only, involving purely questions of law which complainants have no standing to have adjudicated in a court of equity. If the municipality has any legal claim or demand arising out of the invalidity of the lease, complainants may apply to the courts at law for authority to institute an action thereon. *Practice act, § 44, 3 Comp. Stat. p. 4064.*

I will advise an order sustaining the demurrer.