[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 593 
Sebastain P. Vaccaro, who claimed to be a voter and resident of the City of Asbury Park, presented to the New Jersey Supreme Court in August, 1948, a petition for a declaratory judgment adjudging his "rights, status and other legal relations" in connection with a petition stated to have been signed by qualified voters in excess of twenty per centum, of the voters of Asbury Park. It is alleged in the petition that a "controversy" has arisen in Asbury Park over the petition signed by the qualified voters, and whether the same should be filed and an election to proceed thereon, under R.S. 40:70-1 et seq., as claimed by the petitioner, or under R.S. 40:85-1 et seq., as alleged by those in opposition.
The matter in controversy was assigned to this Court for determination, before the Mayor and other city officials were ordered by the Supreme Court to be joined as parties to the proceeding, and since there has been joined, upon application, a number of legal voters in the municipality who support the petition. On September 30, 1948, an answer was filed by the Mayor and other officials made parties, in which it was denied thatR.S. 40:70-1 et seq., had any application for the reasons alleged; that said statutes "deal with the establishment for the first time of the commission form of government; whereas the pertinent statutes are those dealing with the procedure for the abandoning of municipal form of government adopted under R.S.
40:85-1 et seq." The answer further charges that the relief prayed for should not be granted because the petition for a change in government was not filed; that the petitioner, Sebastian P. Vaccaro, is not a resident and qualified voter of Asbury Park and has no rights or legal relations that are effected and that he has no right to file the application for a declaratory judgment.
Depositions were taken and oral arguments were heard. During this period the petition with the signatures of the legal voters was presented to the City Clerk, who refused to retain the same. Depositions relating to petitioner's legal residence disclosed that the petitioner had a business office in Asbury Park, with rooms above, which he claimed as his "legal residence", while his wife and children lived continuously *Page 595 
in a house owned by the petitioner and his wife in an adjoining municipality, in which the telephone and other utility services were listed in the petitioner's name, and paid for by him. It also was shown that he stayed quite frequently at the address outside of Asbury Park. During an oral argument, on this subject, it was conceded that residence was not pertinent to the issue since legal residents of Asbury Park were now parties in the case favoring the petition, and it was admitted by the answering defendants that the petition was presented to the City Clerk. Though these defendants have consented to the elimination of their objection that the petitioner is not a legal resident, and the Court has consented thereto, it should not be understood that the Court encourages a split loyalty in community or family life.
On October 21, 1948, there was filed with the court final briefs and a stipulation signed by all the parties in the case, including the interveners; in which it is stipulated the latter are residents and qualified voters of Asbury Park; that the question of the residence of the petitioner, Sebastian P. Vaccaro, is not material to the determination of the issues in the case and that the City of Asbury Park was governed by a commission form of government from the month of March, 1915 to December 5, 1933, and since the last mentioned date to the present time under the Municipal Manager Law.
The only issue remaining for determination is whether the petitioners who seek to change the City's present form of government should proceed under statute R.S. 40:70-1 et seq.,
or R.S. 40:85-1 et seq. *Page 596 
A comparison of the statutes last mentioned will help to determine which, if any one of them, controls absolutely the procedure to be followed in effecting a change of government from a Municipal Manager form to a Commission form.
 The following are pertinent The following are pertinent
chapters of the Commission chapters of the law relating
Government Law: to the abandonment of Municipal
 Manager form of government:
 R.S. 40:70-3 — "All municipalities
 which shall have heretofore R.S. 40:85-1, as of January
 adopted the provisions of 22, 1945 — "Any municipality
 the act entitled `An act relating which shall have operated for more
 to, regulating and providing than four years under the
 for the government of cities, provisions of the act entitled
 towns, townships, boroughs, `An act relating to, regulating
 villages and municipalities and providing for the government
 governed by boards of of municipalities, except
 commissioners or improvement counties, by a municipal council
 commissioners in this and a municipal manager,' approved
 state' (title as amended), approved March nineteenth, one thousand
 April twenty-fifth, one nine hundred and twenty-three,
 thousand nine hundred and or under the provisions of this
 eleven, as amended and supplemented subtitle, or both, may at any
 and all municipalities general election abandon such
 which shall hereafter organization thereunder and may
 adopt the provisions of chapters resume the form of government
 70 to 76 of this title (Sec. under the law under which it
 40:70-1 et seq.), shall have the was being governed when said act
 commission form of government or this subtitle was adopted.
 and be governed in the The procedure shall be as
 manner hereinafter in said hereinafter in this chapter
 chapters 70 to 76 set forth." provided.
 R.S. 40:71-1 — "The legal voters "The provisions of this chapter
 of any municipality not shall not apply to any
 governed by chapters 70 to 76 municipality which immediately
 of this title (Sec. 40:70-1 et prior to the adoption
 seq.) may adopt said chapters of said act or of this subtitle,
 at an election held in such had operated under the provisions
 municipality, to be called by the of chapters 70 to 76 of this
 municipal clerk upon request title (Sec. 40:70-1 et seq.).
 or petition in writing of twenty Any such municipality may revert
 per cent of the persons to its former form of government
 qualified to vote at the last by electing to do
 general election as shown by
 the registry of qualified voters
 used at such election."
 *Page 597 
 so under the provisions of said
 R.S. 40:71-2 — "Upon the filing chapters 70 to 76."
 of the petition or request
 in writing with the clerk, he On January 23, 1945, the
 shall forthwith call an election, last stated paragraph, in
 to be held on the third quotations, was stricken from
 Tuesday following the date of R.S. 40:85-1 as amended by P.L.
 the filing of the petition, and 1947, Chapter 2, p. 12.
 shall cause public notice of the
 time and place of holding the
 same to be given by advertisement
 signed by himself and
 set up in at least twenty different
 places in the municipality
 and published for at least
 six days previous to the time
 of the election in at least one
 newspaper printed and published
 in the municipality, and
 if there be no such newspaper
 then in a newspaper circulated
 therein."

It appears that the confusion resulting in the controversy in this case was caused by the amendment to R.S. 40:85-1 in P.L.
1947, C. 2, by eliminating the exception contained in the last paragraph of the original act.
 COMPARISON OF COMMISSION
 GOVERNMENT LAW AND MUNICIPAL MANAGER
 LAW AS TO ELECTIONS
 COMMISSION GOVERNMENT MUNICIPAL MANAGER
 LAW LAW IN RE ABANDONMENT
1. Calling Election 1. Calling Election
 40:71-1; 40:71-2 — Petition 40:85-7 — Clerk has ten days
 filed with clerk. Clerk to examine petitions. Then
 forthwith calls election for certifies them to municipal
 third Tuesday after filing council.
 petitions. 40:85-8 — Municipal council
 passes resolution and forwards
 same to county clerk.
 40:85-9 — County clerk places
 question on ballot at next
 general election.
 *Page 598 
2. Time of Taking Effect 2. Time of Taking Effect
 40:75-1. If voters vote to 40:85-10. If voters vote to
 adopt commission government, abandon municipal manager
 then first commissioners act, the abandonment takes
 are elected fifth Tuesday effect January first of the
 following adoption election, second year after the election.
 and take office on first
 Tuesday after their election.
3. Nomination of New Candidates 3. Nomination of New Candidates
 for Office for Office
 40:75-3. Candidates for 40:85-11. Candidates nominated
 commissioner are nominated at primary election in
 by petition consisting of year after the general election
 individual certificates signed at which municipal
 by one half of one per cent manager law was abandoned.
 of the voters at the last
 general election.
4. Election of New Officials 4. Election of New Officials
 40:75-1. First officials 40:85-11. After general
 elected 5th Tuesday after election at which vote to
 vote to adopt commission abandon is adopted and in
 government. the primary election of the
 40:75-2. Commissioners succeeding year, officials are
 elected 2nd Tuesday in May nominated for new form of
 every 4th year. Hold office government. They are elected
 for four-year terms. at general election and
 take office January 1 of the
 2nd year following vote to
 abandon.

Our present Constitution provides, in section VII, paragraph 5: "No law shall be revived or amended by reference to its title only, but the act revived, or the section or sections amended, shall be inserted at length. No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of the act or which shall enact that any existing law, or any part thereof, shall be applicable, except by inserting it in such act." R.S. 40:85-1 et seq., does not amend 40:70-1 et seq., in accordance with the Constitution as above stated. R.S. 40:85-1 as amended by P.L. 1947, C. 2, removed the exception by which R.S. 40:70-1 et seq., was without the provisions of the original act and did not by any *Page 599 
provision declare that R.S. 40:70-1 et seq., was amended or controlled by R.S. 40:85-1.
The evident reason for the adoption of the above stated provision in the Constitution was to prevent covert and incautious legislation; Baldwin Lumber Co. v. Moskowitz,15 N.J. Misc. 438. Covert and incautious intentions should not be presumed. The additional legislation should be considered as an improvement without any alteration by implication or otherwise ofR.S. 40:70-1 et seq. So far as reasonably possible where two statutes are not entirely conflicting they should be harmonized and each given force and effect to that end. The legislature in enacting R.S. 40:85-1, as amended, evidently had this intention as the act is in permissive form; that is to say, it provides that a municipality under R.S. 40:85-1 "may at any general election abandon such organization" and "may resume" its former form of government.
A computation of the time required to adopt a Commission form of government according to the diagrammatic comparison above set forth, under R.S. 40:71-2 et seq., and until the newly elected Commissioners could take office would be nine weeks. Under R.S. 40:85-1 et seq., from the time of filing the petition, in this case, until the Commissioners took office would be two years and two months. It is not to be presumed that undesirable consequences were intended by the enactment of R.S.
40:85-1 et seq.; nevertheless, the results which will follow one construction or another is often a potent factor in its proper interpretation, 50 Am. Jur. p. 372, Sec. 368. It is reasonable to presume the Act last mentioned was intended to have the most beneficial operation that the language permits. The permissive character of the Act supports this conclusion. The statutes under consideration are permissive and not mandatory and relate to the same subject matter and therefore should be construed in pari materia.
In White v. Hunt, 6 N.J.L. 415, 417, Chief Justice Kinsey stated: "In the construction of the acts of the legislature, it has ever been held a sound and wholesome rule, that when divers laws are made relating to one subject, the whole must be considered as constituting one system, and mutually connected with each other." See also In re Book's Will, 90 N.J. *Page 600 Eq. 549. In Public Service Electric Co. v. Camden,118 N.J.L. 245, it is stated that statutes which are in pari materia are to be construed together so as to effectuate a general legislative policy.
The defense that R.S. 40:70-1 et seq., pertains to "establishment for the first time of the commission form of government" is without merit, as the statute referred to does not contain such restriction. The comparison previously set forth as to methods of election, under both statutes, illustrates the advantages and disadvantages of each, depending on one's point of view. They both affect the political rights of the parties interested. Under all the facts and law involved, a liberal and reasonable view should be taken to preserve those rights. It is the declared judgment of the Court that R.S. 40:70-1 et seq.,
is the statute that governs in this case and that an election be held in accordance therewith.