60 N.J. Super. 477 (1960)
159 A.2d 425
ERNEST IPPOLITO, JOSEPH IPPOLITO, VINCENT IPPOLITO AND LEO IPPOLITO, INDIVIDUALLY AND AS PARTNERS DOING BUSINESS AS IPPOLITO & COMPANY, AND PIETRO FEDERICO, PLAINTIFFS,
v.
THE MAYOR OF THE CITY OF HOBOKEN, THE CITY OF HOBOKEN, A MUNICIPAL CORPORATION OF THE COUNTY OF HUDSON, IN THE STATE OF NEW JERSEY, THE COUNCIL OF THE CITY OF HOBOKEN, ANTHONY ROTONDO, M. IOMMETTI & SONS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND TONY IOMMETTI, CHESTER IOMMETTI AND POMPEO IOMMETTI, CO-PARTNERS, TRADING AS M. IOMMETTI & SONS, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 1960.
Decided March 23, 1960.
*479 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Herman W. Kapp argued the cause for plaintiffs (Messrs. Kapp Brothers, attorneys).
Mr. Alfred W. Kiefer argued the cause for defendants M. Iommetti & Sons, Inc. (Messrs. Kiefer & Bollermann, attorneys, Mr. Christian Bollerman, on the brief).
*480 Mr. E. Norman Wilson argued the cause for defendant City of Hoboken (Mr. Robert F. McAlevy, Jr., city attorney for the City of Hoboken, Mr. O.J. Pellet and Mr. E. Norman Wilson, assistant city attorneys, of counsel).
Mr. Harold S. Okin, for defendant Anthony Rotondo (David A. Pressler, on the brief).
The opinion of the court was delivered by HANEMAN, J.A.D.
Application having heretofore been made to and leave having been granted by the Appellate Division, defendants appeal from an order of the Law Division granting plaintiffs leave to amend their complaint.
Ernest, Joseph, Vincent and Leo Ippolito, individually and as partners doing business as Ippolito & Company (Ippolito), and Pietro Federico (Federico) filed a complaint in an action in lieu of prerogative writs contesting the validity of a certain contract between M. Iommetti & Sons, Inc., a corporation (Iommetti), and the City of Hoboken (Hoboken) for the collection and disposal of garbage. Ippolito sues as an unsuccessful bidder for said contract and Federico as a resident and taxpayer of Hoboken.
The original complaint alleges that on March 18, 1959, pursuant to provisions of the statute of the State of New Jersey and ordinances and regulations of Hoboken in such case made and provided, Hoboken advertised for sealed bids for garbage collection service for alternative periods of one, three and five years. On that date bids were submitted by Ippolito, Iommetti and Anthony Rotondo (Rotondo). The bids so received were as follows:

 1 year 3 years 5 years
A. Rotondo ................... $152,000 $459,000 $840,000
Ippolito & Co. ............... 175,000 500,000 None
M. Iommetti & Sons, Inc. ..... 209,000 627,000 1,045,000

Rotondo's bid for three years, having been considered by Hoboken as the lowest, was accepted by resolution of the Mayor and City Council of Hoboken on March 25, 1959. On April 1, 1959 Hoboken and Rotondo entered into a formal contract.
*481 Plaintiffs further allege that Iommetti and Rotondo did "collude, conspire and confederate together to commit a fraud upon the plaintiffs and all of the other citizens, residents and taxpayers of the City of Hoboken, New Jersey, and upon the said City of Hoboken," (having been apprised of Ippolito's intended bid on January 7, 1959 when all bids were rejected for the technical deficiency of Ippolito's bid in not having furnished the three-year dumping permit), to cheat and defraud Hoboken and its citizens, residents and taxpayers by agreeing to share the work to be done and the profits to be realized from an award of the contract to either of them. Iommetti and Rotondo are alleged to have entered into an agreement, prior to the receipt of bids by Hoboken, under which Iommetti would submit a "high" and Rotondo a "low" bid, with the understanding that each of them was to have a common interest in each bid. Plaintiffs allege that said agreement so to bid was contrary to the public policy of the State of New Jersey and the applicable statutes and that the award of the contract to Rotondo was therefore null and void. Plaintiffs bottom this conclusion upon the allegation that the pre-bid agreement tended to promote a monopoly and foreclosed opportunity for competition, and that as a result bidders were not on terms of equality. Plaintiffs also assert that at a recent public hearing before a committee of the New Jersey Senate, created under Senate Resolution No. 4 (1958) and reconstituted under Senate Resolution No. 3 (1959), it was disclosed that Iommetti and Rotondo had so illegally and collusively agreed with the result that Rotondo's moral integrity has been impugned and he is therefore not the lowest responsible bidder.
Plaintiffs conclude that the action of the officials of Hoboken in awarding the contract to Rotondo is "unreasonable, unlawful, arbitrary, capricious and discriminatory, and constitutes a gross abuse of discretion and, as well, has the further effect of promoting favoritism and collusion" and that the award of the contract to Rotondo is illegal, null and void.
*482 After all defendants had filed answers and discovery proceedings had been completed, pretrial was requested by the judge of the Law Division to whom the cause had been assigned. Plaintiffs thereupon moved to amend their complaint. The amendment concerned itself with adding an additional paragraph to the original complaint, alleging that Rotondo's bid was further defective in that he had failed to comply with the dumping site requirements of the specifications, and the addition of two counts to the original complaint, designated second and third counts, respectively.
In the second count Federico alleges that Tony, Chester and Pompeo Iommetti were associated together as co-partners trading as M. Iommetti & Sons (Iommetti & Sons) in the year 1956 and were then engaged in the business of collecting, removing and disposing of garbage, refuse and other waste matter. During the year 1956 Rotondo had been engaged in a like business. Both Iommetti & Sons and Rotondo had been so engaged for some years prior to 1956 and were employed in various municipalities of this State as public scavengers. On or about March 10, 1956, bids having theretofore been received for the collection and disposal of garbage, a contract was awarded to Iommetti & Sons by Hoboken for a period of three years at the price of $183,000 per year. The contract of March 10, 1956 included a specification which provided:

"Sec. 25. ASSIGNMENT OF CONTRACT.
There shall be no assignment, subletting or transfer of the contract nor of any part thereof, nor of any money to become due thereon, without the consent of the Council or the Mayor and Council of the City of Hoboken expressed by resolution."
Contrary to the above quoted provision of the specifications, Iommetti & Sons did "assign, sublet, transfer and sub-contract the said contract" to Rotondo, paying him an approximate sum of $9,675 per month, and since Iommetti & Sons, under the contract, were entitled to approximately $15,250 per month, they made an illegal profit of $5,575 per month, or *483 a total of $200,700 during the entire term of the contract. Federico demands damages under this count against Iommetti & Sons in the amount of $750,000, alleging that:
"10. By reason of the direct, unlawful and illegal breach and violation of the contract by the defendants Tony Iommetti, Chester Iommetti and Pompeo Iommetti, trading as M. Iommetti & Sons, and their failure to render the services thereunder and, as well, the imperative prohibition of the said positive statute, that had been enacted for the protection of the public in the safeguarding of public funds, all moneys paid to them from such public funds were illegally paid and fraudulently received, and accepted with knowledge, contrary to our sound public policy and are to be recovered in an action for money had and received; no title to the moneys so paid passed to these defendants, and they thereby became in their own wrong, and remain trustees of plaintiff Pietro Federico and the other citizens and taxpayers of the City of Hoboken, County of Hudson, and State of New Jersey."
In the third count Federico repeats the allegations of the first and second counts and additionally alleges that prior to the receipt of bids in 1956 Iommetti & Sons and Rotondo did "wrongfully, unlawfully and fraudulently and collusively conspire and confederate to defraud Federico and all other citizens, residents and taxpayers of Hoboken of the public moneys and funds to the extent of $549,000 (more or less)" by the substitution of said Rotondo for Iommetti & Sons for the performance and execution of said contract. It is further alleged that the said Iommetti & Sons and Rotondo wrongfully and maliciously carried their plan into execution covertly, fraudulently and without authorization from the proper officials of Hoboken, to the damage of Federico and all other citizens and residents of Hoboken. Plaintiff demands damages against Iommetti & Sons and Rotondo, jointly and severally upon this count in the amount of $750,000.
The court, having considered the application for leave to amend as above outlined, granted plaintiff's application over defendants' objections, by an order originally dated November 25, 1959 and subsequently by special order re-dated December 23, 1959.
*484 Defendants appeal upon a number of grounds. However, in the light of what here follows, we consider it necessary to treat only of three of these grounds: (1) Federico has no right to institute the suit contemplated by the second and third counts; (2) a taxpayer's action to recover public funds does not sound in certiorari; (3) there is no common question of law or fact between the first and the second and third counts.

I.
Although the style of the second and third counts would lead to the conclusion that plaintiff Federico seeks judgment in his individual capacity as a taxpayer of Hoboken representing all such taxpayers, it is now conceded by plaintiffs that the relief demanded is for the benefit of Hoboken. We shall so consider these counts.
Defendants contend that the allowance of the joinder of the new cause of action by a taxpayer of Hoboken is unlawful because there was no compliance with either N.J.S. 2A:15-18 or N.J.S. 2A:49-1 asserted to constitute prerequisites for the institution of actions of this kind by taxpayers on behalf of municipalities.
Prior to 1903 a taxpayer had no standing to prosecute a claim or demand at law on behalf of a municipality where the officials failed to act. Taxpayers were obliged, in those circumstances, to resort to the Court of Chancery because of the absence of a remedy at law. See Suburban Homes Co. v. Town of West Orange in Essex County, 104 N.J. Eq. 227, 229 (Ch. 1929). This result was bottomed upon the principle that a person other than the one in whom the right of action exists has no power to enforce that right in a court of law except where power to do so has been legally conferred upon him. Allen v. Humphrey, 74 N.J.L. 255 (Sup. Ct. 1907). The right of a taxpayer to maintain an action at law in behalf of a municipality was first conferred by L. 1903, c. 247, p. 547 and the jurisdiction of the Court *485 of Chancery thus terminated because the remedy at law became adequate. Suburban Homes Co. v. Town of West Orange in Essex County, supra; Green v. Piper, 80 N.J. Eq. 288 (Ch. 1912).
By the Revision of 1937, L. 1903, c. 247, p. 547 became R.S. 2:27-32, and eventually by the Revision of 1952 became N.J.S. 2A:15-18. N.J.S. 2A:15-18 reads:
"If the board of chosen freeholders of a county or the governing body of a municipality fails to prosecute a claim or demand of the county or municipality, any court in which an action on such claim or demand is cognizable may, upon terms, allow a taxpayer and resident of the county or municipality to commence and prosecute an action upon the claim or demand in the name and on behalf of the county or municipality, if in the opinion of the court the interests of the county or municipality would be promoted thereby."
In 1908 the Legislature enacted a second statute concerning suits by taxpayers for the benefit of a "township or school district." L. 1908, c. 162, p. 264. The Revision of 1937 by R.S. 2:64-1 contained provisions which continued the original purpose of the 1908 act, although with somewhat different verbiage. By the Revision of 1952 R.S. 2:64-1 became N.J.S. 2A:49-1. N.J.S. 2A:49-1 reads:
"If moneys, funds or other property held or owned by any municipality or school district, or held or owned officially or otherwise for or on behalf thereof, have been or shall be, without right, obtained, received, paid, converted or disposed of, action for the recovery thereof or to recover damages or other compensation for such wrongful obtaining, receiving, paying, conversion or disposition, or both, may be maintained in any court of competent jurisdiction thereof, by 10 freeholders of such municipality or district who have paid taxes on real estate in such municipality or school district, within 1 year, in the name of and for and on behalf of such municipality or school district. Before any such action shall be maintained, such freeholders shall file with the clerk of such municipality or school district, a bond to the municipality or school district conditioned for the payment of the costs, if any, assessed against such municipality or school district, in said action, approved as to form and amount by a judge of the court in which such action is brought." (Emphasis supplied.)
*486 It is to be noted that the enactment under the Revision of 1952 changed the words "township or school district" which appeared in both L. 1908, c. 162, p. 264 and R.S. 2:64-1 to "municipality or school district." (Emphasis supplied.) This constituted an express change from and broadening of the original statute, and resulted in a positive inconsistency with the provisions of the prior law. It follows that the statute now concerns the more inclusive category of "municipality" in place of the restricted category "township." See State v. Culver, 23 N.J. 495, 504 (1957).
It becomes necessary to construe N.J.S. 2A:15-18 and N.J.S. 2A:49-1 in their application to the present controversy.
N.J.S. 2A:15-18 confers the right upon a taxpayer and resident of a municipality to commence and prosecute an action on behalf and in the name of a municipality upon any claim or demand of said municipality where (1) the governing body fails to prosecute, and (2) a court in which such claim or demand is cognizable first determines that the interest of a municipality would be promoted thereby and consents to the bringing of the action.
The words "claim or demand" have in the law a well defined meaning and include everything which may be demanded by suit. See 14 C.J.S. Claim, p. 1182; 26A C.J.S. Demand, p. 168; White v. Hunt, 6 N.J.L. 415 (Sup. Ct. 1798). It follows that N.J.S. 2A:15-18 applies to all suits of whatever nature. Cf. Green v. Piper, supra. The prerequisite of judicial consent was included in the statute to prevent abuse of the remedy. Suburban Homes Co. v. Town of West Orange, in Essex County, supra, 104 N.J. Eq., at page 229.
N.J.S. 2A:49-1 confers the right upon ten freeholders of a municipality who have there paid taxes for one year, without prior court consent, to maintain an action for the recovery of "moneys, funds or other property [of the municipality] * * * held or owned * * * for or on behalf thereof * * * (and) damages or other *487 compensation for such wrongful obtaining * * *." Implicit in such permission is, of course, a condition precedent that the municipal officials have failed to bring suit. The statute restricts the action to the recovery of "moneys, funds or other property."
The former statute is general in its application and the latter specific. Where there is a conflict between a general statute and a specific one covering a subject in a more minute and definite way, the latter will prevail over the former, where it applies, and will be considered an exception to the general statute. State v. Hotel Bar Foods, Inc., 18 N.J. 115, 128 (1955).
The effect of the two cited statutes is as follows: Generally, one who is a resident and a taxpayer of a municipality may undertake the institution and prosecution of suit for the benefit of such municipality for any cause of action belonging to it, upon the failure of municipal officials to commence suit, but only upon application to and receipt of express statutory consent of the proper court. An exception to this general rule arises where the action concerns the recovery of "moneys, funds or other property" of the municipality held by or on its behalf, or damages for the wrongful disposition thereof. In this latter event a minimum of ten freeholders who have paid taxes on real estate within one year may maintain such actions without court consent, upon filing a properly approved bond. It follows that if one or more taxpayers-residents (not qualifying as 10 freeholders) are desirous of instituting suit for and on behalf of the municipality on a claim or demand of any nature, prior court consent and determination of public interest is required. The plaintiff taxpayer herein not qualifying as "10 freeholders," etc., and not having applied to the court for leave to commence and prosecute the action contemplated under the second and third counts in the name and on behalf of Hoboken, nor any order having been entered by any court that the interests of Hoboken would be promoted by such suit, has no right or authority to bring such action, *488 and this without regard to whether the claim asserted is deemed to be of the specific kind covered by N.J.S. 2A:49-1.

II.
Plaintiffs seek to overcome the bar of noncompliance with the statutes cited above with the argument that the added counts are actually actions in the nature of prerogative writs, available to any taxpayer beyond the purview of the statutes above cited. We do not agree. As above observed, although plaintiffs' pleadings seek a judgment for Federico in his individual capacity as a taxpayer and not for the benefit of Hoboken itself they now concede, as noted above, that these causes of action have been brought for and on behalf of the municipality.
It follows that the second and third counts are not suits contesting the action of the governing body of Hoboken but rather, in legal contemplation, actions by Hoboken seeking monetary damages.
"The historic function of the common-law writ of certiorari is to supervise and review the proceedings of all inferior tribunals not proceeding according to the course of the common law, for the correction of jurisdictional excesses and errors of law revealed by the record. In New Jersey, from early times, certiorari performed the function of a writ of error where error would not lie."
Fischer v. Twp. of Bedminster, Somerset County, 5 N.J. 534, 539 (1950). See also Mellor v. Kaighn, 89 N.J.L. 543 (E. & A. 1916).
It is not clear whether the actions sound in breach of a contract or tort. In either event, bearing in mind that these are actions for the benefit of Hoboken and that Hoboken is the real party in interest, although not specifically named as a plaintiff, there is an adequate remedy by an action at law. Certiorari was not available where there existed another adequate remedy. Independent Taxi Owners Ass'n v. Cuthbert, 135 N.J.L. 325 (Sup. Ct. 1947). The *489 relief demanded by plaintiffs for and on behalf of Hoboken in the second and third counts is not characteristically of the kind obtainable by prerogative writs prior to 1948 and is therefore not within the purview of a present day action in lieu of prerogative writs. It is peculiarly the subject of an ordinary action in the Law Division for damages.

III.
Although the foregoing points would be dispositive of the appeal, we think it desirable to dispose of this matter on a broader basis.
Defendants contend that the addition of the second and third counts in effect join parties defendant contrary to R.R. 4:33-1(a), which provides, in part:
"* * * All persons may be joined in one action as defendants if there is asserted against them jointly, severally, in the alternative or otherwise, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. * * *"
Defendants argue that the several joined claims do not arise out of the same transaction or series of transactions and that there is no common question of law or fact. Plaintiffs do not argue that there is a common question of law but say there is a common question of fact. They argue that a common question of fact is involved in the first, and the second and third counts. They rationalize that proof of the facts alleged in the latter two counts will serve to demonstrate that Rotondo lacks moral integrity and hence was not the lowest responsible bidder in 1959. "Responsibility" for the award of a public contract, they say, involves not only experience, financial ability and facilities necessary to perform the contract, but moral integrity as well. See Arthur Venneri Co. v. City of Paterson Housing Authority, 29 N.J. 392, 403 (1959). We are not called *490 upon to conclude whether proof of the factual allegations in the second and third counts would constitute lack of moral integrity, as plaintiffs' argument is fallacious in another respect. Nowhere in the first count is there any allegation, directly or inferentially, that Rotondo lacks moral integrity because of his conduct in connection with the 1956 contract. The award of the 1959 contract is sought to be voided solely upon the ground of the alleged collusive bidding agreement between Rotondo and Iommetti and the illegality thereof in various respects, including the lack of moral integrity exhibited by that particular transaction. As the pleadings now stand, testimony in substantiation of the facts alleged in the second and third counts would not be admissible upon a trial of the first count. Parties are limited in their proofs to the issues contained in the pleadings and pretrial order. Jardine Estates, Inc. v. Koppel, 24 N.J. 536, 542 (1957). There are no common questions of fact present in all the conjoined counts. We therefore need not consider whether the 1956 arrangement and the 1959 transaction constitute the "same series of transactions." This is at least questionable.
The City of Hoboken urges what we regard as a soundly conceived basic objection to the action of the trial court. The original complaint challenges the validity of the currently effective garbage contract on specific allegations of illegality in relation to the award thereof. It is in the highest public interest that such action be disposed of as expeditiously as possible so that the proper and lawful administration of this most essential of municipal services become settled and adjudicated at the earliest possible date. The tagging of the controversy over the 1956 contract onto the action challenging the current garbage contract can accomplish nothing but to encumber, confuse and delay the prompt determination of the status of the latter. We do not minimize the public interest in an adjudication, if determined to be necessary on proper application to an appropriate court, of the controversy over the execution of the *491 1956 contract. But it appears obvious to us that this is essentially a different subject matter and best handled in a separate action, if such is properly allowed to be brought.
Defendants do not argue that the amendment of the first count was erroneous. We will therefore consider that this ground has been abandoned.
Reverse.